[No. B113296. Second Dist., Div. Five. June 19, 1998.*]

ROY CHEN et al., Plaintiffs and Respondents, v.
FRANCHISE TAX BOARD, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

---

*Review granted August 26, 1998. Review was dismissed on October 27, 1999, and the opinion was directed to be partially published.

†Pursuant to California Rules of Court, rules 976(b) and 976.1, parts I, II.A, and III of this opinion are certified for publication.

**COUNSEL**

Daniel E. Lungren, Attorney General, David S. Chaney and Herbert A. Levin, Deputy Attorneys General, for Defendant and Appellant.

Riordan & McKinzie, Angelo C. Falcone, Robert N. Duran, Gina M. Calvelli and Karen Meckstroth for Plaintiffs and Respondents.

**OPINION**

**TURNER, P. J.—**

## I. INTRODUCTION

The Franchise Tax Board (board) appeals from a judgment partially refunding corporate franchise taxes, penalties, and interest paid by Roy Chen on behalf of Valuable Properties, Inc. (VP). The judgment was in favor of Mr. Chen as the successor in interest to VP, a dissolved corporation.[1] Prior to its dissolution, Mr. Chen was the president and a shareholder of VP. At issue was a deduction by VP for a compensation expense on its 1981 tax return, which was filed in 1984. The matter was tried by the court without a jury on stipulated facts, oral testimony, and documentary evidence. The board contends Mr. Chen was required to pay, in full, the accrued interest as well as the tax itself as a condition precedent to judicial review of his refund claim. Further, the board contends the expense in question was deferred compensation and therefore was not deductible by VP until it was paid. In the published portion of the opinion, we conclude payment of interest is not a jurisdictional prerequisite to judicial review of a tax refund claim brought before the board. Further, in the unpublished portion of the opinion, we reject the board's remaining contention concerning deferred compensation. Accordingly, we affirm the judgment.

## II. DISCUSSION

### A. *The Trial Court Had Jurisdiction to Adjudicate This Refund Action*

 The board contends the superior court had no jurisdiction to adjudicate the viability of VP's deduction because Mr. Chen did not pay the tax,

---

[1]The respondent's brief on appeal is filed on behalf of Roy Chen and Valuable Properties, Inc. However, the judgment names only Roy Chen, as successor in interest.

penalties, *and interest* in full prior to seeking relief. We conclude that payment of the accrued interest was not a jurisdictional prerequisite in this case to judicial consideration of Mr. Chen's refund action. Therefore, the trial court had jurisdiction to adjudicate this matter. We do not reach the question whether penalties must be paid in addition to the tax as a prerequisite to a refund action. This is because, as noted above, Mr. Chen paid the tax *and penalties* prior to bringing this action. We turn to the issue of whether payment of interest on the tax was a jurisdictional prerequisite to Mr. Chen's refund action.

### 1. *Background*

The following facts were undisputed. VP accrued and deducted on its tax return for the fiscal year ended September 30, 1981, a compensation expense in the amount of $951,000. The return was filed with the board on January 26, 1984. On May 24, 1985, the board disallowed the deduction and proposed to assess against VP tax and penalties of $118,293 plus accrued interest. VP filed a protest of the proposed assessment with the board. The board denied the protest. VP appealed the denial of its protest to the State Board of Equalization. The State Board of Equalization affirmed the denial. On March 31, 1994, Mr. Chen, on VP's behalf, paid the tax and penalties totaling $118,293 to the board. He did not pay the accrued interest. Mr. Chen then filed with the board a claim for a refund of the amount paid. The board denied the refund claim. Mr. Chen timely commenced the present action for a refund of corporate franchise taxes assessed and paid. On June 12, 1996, the board levied upon Mr. Chen's bank account and collected $21,575 in partial payment of the accrued interest.

### 2. *Standard of Review*

The application of constitutional provisions and statutes to stipulated and undisputed facts presents a question of law. (*International Engine Parts, Inc.* v. *Feddersen & Co.* (1995) 9 Cal.4th 606, 611 [38 Cal.Rptr.2d 150, 888 P.2d 1279]; *Southern California Edison Co.* v. *State Board of Equalization* (1972) 7 Cal.3d 652, 659, fn. 8 [102 Cal.Rptr. 766, 498 P.2d 1014]; *Souza* v. *Lauppe* (1997) 59 Cal.App.4th 865, 871 [69 Cal.Rptr.2d 494].) This court is not bound by the trial court's conclusions. (*Souza* v. *Lauppe, supra,* 59 Cal.App.4th at p. 871; *Harbor Fumigation, Inc.* v. *County of San Diego Air Pollution Control Dist.* (1996) 43 Cal.App.4th 854, 859 [50 Cal.Rptr.2d 874].)

### 3. *The Full Payment Rule Under Article XIII, Section 32 of the California Constitution*

Under California law, a taxpayer may not obtain judicial review of the validity of a tax which is due but has not been paid. (Cal. Const., art.

XIII, § 32;[2] *State Bd. of Equalization* v. *Superior Court* (1985) 39 Cal.3d 633, 638 [217 Cal.Rptr. 238, 703 P.2d 1131].) The underlying reason for this rule is that the prompt collection of tax revenue is vital to the functioning of government and the provision of essential public services. (*State Bd. of Equalization* v. *Superior Court, supra,* 39 Cal.3d at p. 638; *Pacific Gas & Electric Co.* v. *State Bd. of Equalization, supra,* 27 Cal.3d at p. 283; *Modern Barber Col.* v. *Cal. Emp. Stab. Com.* (1948) 31 Cal.2d 720, 731-732 [192 P.2d 916].)

The relevant restriction of a taxpayer's remedy to a postpayment refund action is set forth in article XIII, section 32, which states: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. *After payment of a tax claimed to be illegal,* an action may be maintained to recover the tax paid, with interest, in such a manner as may be provided by the Legislature." (*Ibid.,* italics added.) The Supreme Court has held that article XIII, section 32 establishes: "[T]he sole legal avenue for resolving tax disputes is a postpayment refund action. A taxpayer may not go into court and obtain adjudication of the validity of a tax which is due but not yet paid." (*State Bd. of Equalization* v. *Superior Court, supra,* 39 Cal.3d at p. 638.) In *State Bd. of Equalization,* the Supreme Court held that a taxpayer who received a deficiency notice for $187,576.92 owed in sales tax *and interest* could not, by paying $250 toward that obligation, avoid the effect of article XIII, section 32. The court held, "[W]here such partial payment is made and accepted by the taxing authority, an action for refund may not be maintained until the full amount claimed due for a given reporting period is paid." (39 Cal.3d at pp. 642-643, fn. omitted.) The issue presently before this court was neither presented nor decided in *State Bd. of Equalization.* The taxpayer in that case paid only a portion of the *taxes* assessed. By contrast, Mr. Chen paid the taxes in full. In *State Bd. of Equalization,* there was no discussion of the interest separate and apart from the tax. (Accord, *Faix, Ltd.* v. *County of Los Angeles* (1976) 54 Cal.App.3d 992, 1003-1004 [127 Cal.Rptr. 182] [plaintiff who had paid part but not all of the real estate taxes assessed had not met the requirements for accrual of a refund cause of action].)

---

[2]All further references to article XIII, section 32, are to the California Constitution. The Supreme Court has noted, "Since 1910 there have been . . . constitutional provisions [similar to article XIII, section 32,] which have been subject to numerous minor revisions and renumberings." (*Pacific Gas & Electric Co.* v. *State Bd. of Equalization* (1980) 27 Cal.3d 277, 280, fn. 3 [165 Cal.Rptr. 122, 611 P.2d 463].) By Proposition 8, passed by the voters of this state on November 5, 1974, former article XIII, section 15, of the California Constitution was repealed, and the provisions of that section were placed in separate section 32 and amended to its present form. (27 Cal.3d at p. 281, fn. 5.)

Article XIII, section 32 also expressly provides that the Legislature may prescribe the manner in which actions for tax refunds must be brought. (*Woosley* v. *State of California* (1992) 3 Cal.4th 758, 789 [13 Cal.Rptr.2d 30, 838 P.2d 758]; *Cod Gas & Oil Co., Inc.* v. *State Bd. of Equalization* (1997) 59 Cal.App.4th 756, 759 [69 Cal.Rptr.2d 366].) As the Supreme Court explained in *Woosley*: "This constitutional limitation rests on the premise that strict legislative control over the manner in which tax refunds may be sought is necessary so that governmental entities may engage in fiscal planning based on expected tax revenues. (See *State Bd. of Equalization* v. *Superior Court*[, *supra*,] 39 Cal.3d [at p.] 638 . . . .)" (*Woosley* v. *State of California, supra*, 3 Cal.4th at p. 789.)

### 4. *Statutory Authorization for Franchise Tax Refund Actions*

Revenue and Taxation Code section 18401 et seq. govern the administration of franchise tax laws.[3] Section 19381 restates the first sentence of article XIII, section 32, as follows: "No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action, or proceeding in any court against this state or against any officer of this state to prevent or enjoin the assessment or collection of any tax under this part . . . ." Section 19382 authorizes a lawsuit against the board to obtain a postpayment refund of franchise taxes and states: "Except as provided in Section 19385 [where the board fails to mail notice of action on a refund claim], *after payment of the tax* and denial by the [board] of a claim for refund, any taxpayer claiming that the *tax* computed and assessed is void in whole or in part may bring an action, upon the grounds set forth in that claim for refund, against the [board] for the recovery of the whole or any part of the amount paid." (Italics added.)

### 5. *The Franchise Tax Board's Position*

The use of the word "tax" in article XIII, section 32, and section 19382 has recently given rise to a controversy as to whether full payment of accrued interest, as well as the tax, is a jurisdictional prerequisite to a refund action. From at least January 1977, until June 1997, the board took the position that full payment of the tax and penalties assessed, *not including any accrued interest,* was a prerequisite to both a refund claim and a judicial determination of an alleged tax overpayment. (Cal. Franchise Tax Bd., Legal

---

[3]All further statutory references are to the Revenue and Taxation Code unless otherwise noted.

Ruling No. 402 (Jan. 27, 1977) [1971-1978 Transfer Binder] Cal. Tax Reports (CCH) ¶ 89-526, pp. 8624-8625.)[4]

The board's position was called into doubt when, on February 28, 1997, Division Three of the Court of Appeal for this appellate district issued its opinion in *Garg* v. *People* ex rel. *State Bd. of Equalization* (1997) 53 Cal.App.4th 199, 204-212 [61 Cal.Rptr.2d 376]. As will be noted, we respectfully disagree with only a small piece of obiter dictum in *Garg*. It is that dictum which serves as the basis for the board's present position. *Garg* was an action by a taxpayer to invalidate an offset of attorney's fees he was awarded in defense of an action to collect sales and use taxes. The trial court deemed the lawsuit to be in effect an action for a tax refund. (*Id.* at p. 204.) The State Board of Equalization asserted the court had no jurisdiction to adjudicate the propriety of the tax collection until the plaintiff paid the claimed tax in full. (*Id.* at p. 206.) In *Garg*, the Court of Appeal stated "that the California Constitution forbids a court from adjudicating the validity of a tax before the tax, *together with interest and penalties*, has been paid in full." (*Id.* at p. 208, italics added.) The court did not cite any authority for that proposition. However, in a later footnote to the opinion, the following appears: "In addition to the cases discussed in this opinion, the Board has cited *People* v. *Pacific Employers Ins. Co.* (1973) 36 Cal.App.3d 296 . . . , *Sonleitner* v. *Superior Court* (1958) 158 Cal.App.2d 258 . . . , *Horack* v. *Franchise Tax Board* (1971) 18 Cal.App.3d 363 . . . and several federal cases in support of its jurisdictional argument. *Pacific Employers* and *Sonleitner* stand for the proposition, *not contested in this case*, that interest and

---

[4]The board reasoned in part as follows: "Penalties assessed for any year are to be treated as an addition to tax in determining whether the taxpayer has paid the entire tax assessed or asserted against him (it). [Citations.] Payment of assessed interest is not a necessary element to a claim for refund predicated upon the overpayment of tax and/or penalties for any particular year (*Kell-Stom Tool Co., Incorporated* v. *U.S.*, 205 Fed.Supp. 190 (1953); *Flora* v. *United States* [(1960) 362 U.S. 145 [80 S.Ct. 630, 4 L.Ed.2d 623]]. Separate and specific provisions for the payment of interest on overpayments are provided in the law. [Citations.]" (Cal. Franchise Tax Bd., Legal Ruling No. 402, *supra*, [1971-1978 Transfer Binder] Cal. Tax Rptr. (CCH) ¶ 89-526, pp. 8624-8625.) The federal full payment rule, to which the board cited, requires that as a prerequisite to federal court jurisdiction over a tax refund action, the taxpayer must pay the assessment in full, including penalties and interest. (*Flora* v. *United States* (1960) 362 U.S. 145, 177 [80 S.Ct. 630, 647, 4 L.Ed.2d 623] [28 U.S.C. § 1346(a)(1) "requires full payment of the assessment before an income tax refund suit can be maintained in a Federal District Court."] However, the federal statute at issue in *Flora* differs significantly from the statute at issue here. Title 28 of the United States Code section 1346(a)(1) provides that the federal district courts shall have jurisdiction of "[a]ny civil action against the United States for the recovery of any internal-revenue *tax* alleged to have been erroneously or illegally assessed or collected, or any *penalty* claimed to have been collected without authority or any *sum* alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws . . . ." (Italics added.) Therefore, federal authority following *Flora* is unpersuasive. Our task is to construe the language of the California statute in accordance with this state's law.

penalties are a part of any tax claim, which must be paid before the taxpayer may litigate the validity of the tax. ([*People* v. *Pacific Employers Ins. Co.*, *supra*,] 36 Cal.App.3d at p. 300; [*Sonleitner* v. *Superior Court*, *supra*,] 158 Cal.App.2d at p. 263.) *Horack* stands for the proposition that, except where a taxpayer's wages are sought to be levied upon, the federal Constitution is not violated by a scheme of tax assessment which provides for judicial review only after full payment of the tax, interest and penalties. ([*Horack* v. *Franchise Tax Board*, *supra*,] 18 Cal.App.3d at p. 370.) The federal cases cited by the Board simply duplicate the rules that are stated in the California cases." (*Garg* v. *People* ex rel. *State Bd. of Equalization*, *supra*, 53 Cal.App.4th at p. 211, fn. 12, italics added.) As that footnote makes clear, the proposition that interest, as well as the tax and penalties, must be paid in full prior to bringing a refund action was uncontested in *Garg*; therefore, the opinion is not conclusive authority on that issue. (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 828 [4 Cal.Rptr.2d 615, 823 P.2d 1216]; *Security Pacific National Bank* v. *Wozab* (1990) 51 Cal.3d 991, 1003-1004 [275 Cal.Rptr. 201, 800 P.2d 557]; *Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 734-735 [257 Cal.Rptr. 708, 771 P.2d 406]; *Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689]; *Stockton Theaters Inc.* v. *Palermo* (1956) 47 Cal.2d 469, 474 [304 P.2d 7].) ▪ The Supreme Court has held: "The discussion or determination of a point not necessary to the disposition of a question that is decisive of the appeal is generally regarded as obiter dictum . . . ." (*Stockton Theaters Inc.* v. *Palermo*, *supra*, 47 Cal.2d at p. 474.)

Further, the cases cited in the *Garg* footnote, *People* v. *Pacific Employers Ins. Co.* (1973) 36 Cal.App.3d 296, 300 [111 Cal.Rptr. 350], *Sonleitner* v. *Superior Court* (1958) 158 Cal.App.2d 258, 263 [322 P.2d 496], and *Horack* v. *Franchise Tax Board* (1971) 18 Cal.App.3d 363, 370 [95 Cal.Rptr. 717], do not support the proposition that interest must be paid under the provisions of article XIII, section 32 or section 19382 in order to commence refund litigation. *People* v. *Pacific Employers Ins. Co.*, *supra*, 36 Cal.App.3d at page 298, was an action to enforce a surety's liability for sales and use taxes, including interest and penalties, incurred by the principal. At issue was the surety's liability for penalties and interest assessed after cancellation of a statutory sales tax bond. The potential liability was based on unpaid taxes in connection with sales transactions which occurred prior to the cancellation of the bond. (*Id.* at p. 299.) The court held the surety was liable for the penalties and interest as well as the taxes. (*Id.* at p. 300.) In so holding, the court relied on the proposition that penalties and interest are treated as part of the tax arising from the sales transactions. (*Ibid.*) The question in *Sonleitner* v. *Superior Court*, *supra*, 158 Cal.App.2d at pages 259-260, was whether a jury trial was required in an action by the State

Board of Equalization to collect motor vehicle fuel license taxes together with penalties and interest. The Court of Appeal held there was no right to a jury trial. (*Id.* at p. 263.) The Court of Appeal then stated: "Furthermore, petitioner cannot bolster his claim by asserting that this is partially an action to collect a penalty. It is well settled in this state that a penalty which is created by statute for failure to pay a tax assessment becomes part of the tax. [Citations.]" (*Ibid.*) Finally, *Horack* v. *Franchise Tax Board, supra,* 18 Cal.App.3d at pages 366-370, held, in a case involving a jeopardy assessment against a taxpayer's contraband, that California's postpayment refund action remedy did not violate due process. None of these decisions involved an interpretation of article XIII, section 32 or section 19382 in the context of whether interest must be paid as a precondition to the commencement of a tax refund action.

We are aware that courts have stated in varying circumstances that *penalties* are a part of a tax. (E.g., *County of Los Angeles* v. *Morrison* (1940) 15 Cal.2d 368, 373 [101 P.2d 470, 129 A.L.R. 443] [whether penalty should be imposed against executor personally or against the estate]; *Carpenter* v. *Peoples Mut. Life Ins. Co.* (1937) 10 Cal.2d 299, 303-304 [74 P.2d 508] [penalty for default in the payment of state insurance company taxes "is as much a part of the tax as the principal amount"]; *Long Beach City School Dist.* v. *Payne* (1933) 219 Cal. 598, 600-601 [28 P.2d 663] [dispute between public entities as to which should receive penalties for delinquent taxes]; *County of Los Angeles* v. *Ballerino* (1893) 99 Cal. 593, 595-596 [34 P. 329] [Act of April 23, 1880, contemplated that additional 5 percent incurred by reason of the default in payment of taxes "shall be collected at the same time and in the same manner as the delinquent tax" and is not "imposed as a penalty or punishment" but "is only a mere incident to the cause of action arising upon the statutory liability to pay the taxes duly levied upon property which has been assessed in accordance with law."]; *Camden Fire Ins. Assn.* v. *Johnson* (1941) 42 Cal.App.2d 528, 531 [109 P.2d 447] [taxation on insurance companies levied upon the privilege of doing business in the state was a revenue tax adopted for the purpose of raising funds for the state, and the penalties imposed for nonpayment of such taxes become part of the tax]; *State of California* v. *Hisey* (9th Cir. 1936) 84 F.2d 802, 805 [whether penalty was lien on property held by receiver]; see *Weston Inv. Co.* v. *State of California* (1948) 31 Cal.2d 390, 393-394 [189 P.2d 262] [noting that although, *pursuant to statute,* delinquent penalties attached to and were a part of real property taxes, there was no similar statutory provision as to redemption penalties, therefore redemption penalties did not attach to the tax].) However, none of those cases hold that, in view of article XIII, section 32, and section 19382, an action for a refund of taxes paid is jurisdictionally deficient unless there has been a full payment of taxes, penalties, *and*

*interest.* As the Supreme Court noted in *Union Pacific R.R. Co.* v. *State Bd. of Equalization* (1989) 49 Cal.3d 138, 156, footnote 16 [260 Cal.Rptr. 565, 776 P.2d 267], "Courts have occasionally stated that a penalty is part of a tax, but none of the cases containing such statements involved the issue of whether a prepayment challenge was proper under article XIII, section 32." The same is true as to interest prepayment being a condition precedent to a refund action.

On June 2, 1997, in response, in part, to the *Garg* decision, the board withdrew Legal Ruling No. 402. (Cal. Franchise Tax Bd., Notice No. 97-4 (June 2, 1997) Cal. Tax Reports (CCH), ¶ 402-923.)[5] Three months later, on September 4, 1997, the board issued a further notice on this subject. (Cal. Franchise Tax Bd., Notice No. 97-8 (Sept. 4, 1997) Cal. Tax Reports (CCH) ¶ 402-940.) That notice stated: "Pending a final, controlling appellate judicial decision: [¶] For purposes of consideration of administrative claims and appeals to the State Board of Equalization, the [board] will continue to accept refund claims that meet the criteria of . . . section 19322 [in writing, signed by taxpayer or authorized representative, stating specific grounds] and are filed together with or after an amount equal to the *tax principal, additions to tax and penalties (but not interest)* has been paid in full. Statutory interest will continue to compound daily on any unpaid interest amount under . . . section 19521(b). [¶] In refund actions filed in court, if *all such*

---

[5]The board stated in relevant part: "[*Garg*] held that the California Constitution forbids a court from adjudicating the validity of a tax before the tax, together with interest and penalties, has been paid in full. [¶] *Shiseido Cosmetics (America), Ltd.* v. *Franchise Tax [Bd.]* (1991) 235 Cal.App.3d 478, 486-489 [286 Cal.Rptr. 690], held that satisfaction of the essential statutory criteria of prepayment and a contemporaneous or subsequent clear written statement that a claim was being sought must first occur for a valid refund claim to exist. [The board] had no power to authorize as valid a purported refund claim that failed to meet these essential statutory criteria. [*Shiseido Cosmetics (America) Ltd.* v. *Franchise Tax [Bd.]*, *supra*, 235 Cal.App.3d at page 489, held that a taxpayer seeking a refund of franchise taxes paid under protest, and based on a challenge to the constitutionality of the tax assessment, was not excused from filing an administrative refund claim, and the failure to exhaust administrative remedies barred the action at law.] See also *State [Bd.] of Equalization* v. *Superior Court* (1985) 39 Cal.3d 633, 642 [217 Cal.Rptr. 238, 703 P.2d 1131] [no refund action could be maintained upon a *partial* payment of taxes due]; *Masi* v. *Nagle* (1992) 5 Cal.App.4th 608[, 611-613] [7 Cal.Rptr.2d 423] [taxpayers assessed under the Unemployment Insurance Code could not predicate refund action on payment of entire tax for one reporting period out of a multiple-reporting-period assessment; applicable statute (Unemp. Ins. Code, § 1178, subd. (d)) provided taxpayer ' "may file a claim for refund *upon payment of the amount of the assessment, including interest and penalties,* and thereafter may pursue all administrative and judicial review rights . . . ." ']; *Farrar* v. *Franchise Tax [Bd.]* (1993) 15 Cal.App.4th 10[, 14] [18 Cal.Rptr.2d 611] [would-be class representatives were required to strictly comply with statute authorizing administrative income tax refund claims filed on behalf of a class of taxpayers; doctrine of substantial compliance could not be invoked.]. [¶] The [board] will continue to consider the effect of the cases cited above. Legal Ruling 402 is hereby withdrawn." (Cal. Franchise Tax Bd., Notice No. 97-4, *supra*, Cal. Tax Rptr. (CCH) ¶ 402-923.)

*amounts (including interest)* have not been paid in full at the time the action is filed, [the board] will raise as a jurisdictional issue the failure to pay in full all such amounts. [¶] Taxpayers may avoid uncertainty in this area by making payment of all amounts, including interest, together with or before a refund claim is filed." (*Ibid.,* italics added.) The board's conduct in the present case, undertaken in good faith, is consistent with its June 2, 1997, notice.

6. *Application of the General Rules of Constitutional and Statutory Construction Support the Conclusion "Tax" Means Tax*

The general rules governing the construction of words in a statute or constitution are well established. The Supreme Court has held: "Words used in a statute or constitutional provision should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) or of the voters (in the case of a provision adopted by the voters). [Citations.]" (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299]; accord, *People* v. *Hansel* (1992) 1 Cal.4th 1211, 1217 [4 Cal.Rptr.2d 888, 824 P.2d 694].) It is a fundamental rule that when a constitutional provision is plain and unambiguous and different meanings cannot reasonably be placed on the words employed, it is mandatory and the courts are bound to obey it. (*Anderson-Cottonwood I. Dist.* v. *Klukkert* (1939) 13 Cal.2d 191, 196 [88 P.2d 685].) The Supreme Court has also held: "When interpreting a statute our primary task is to determine the Legislature's intent. (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 . . . .) In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent. (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 826 . . . .)" (*Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218].) We must give the words used their usual and ordinary meaning. (*Lennane* v. *Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268 [36 Cal.Rptr.2d 563, 885 P.2d 976].) As Supreme Court explained in *Lennane*: "If there is no ambiguity in the language of the statute, 'then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.' (*Kizer* v. *Hanna* (1989) 48 Cal.3d 1, 8 . . . .) 'Where the statute is clear, courts will not "interpret away clear language in favor of an ambiguity that does not exist." [Citation.]' (*Hartford Fire Ins. Co.* v. *Macri* (1992) 4 Cal.4th 318, 326 . . . .)" (*Lennane* v. *Franchise Tax Bd., supra,* 9 Cal.4th at p. 268.)

Both article XIII, section 32, and section 19382 provide that payment of the *tax* is a prerequisite to a refund action. In its plain, ordinary, and

commonsense meaning, "tax" means tax. It does not mean interest. If the Legislature meant to include accrued interest as well as tax, it would have said so. (Cf., e.g., Unemp. Ins. Code, § 1178, subd. (d) ["Following a final decision denying a petition for reassessment pursuant to Article 11 . . . . the employing unit . . . may file a claim for refund *upon payment of the amount of the assessment, including interest and penalties*, and thereafter may pursue all administrative and judicial review rights . . . ." (Italics added.)]; § 23305 ["Any [corporate] taxpayer which has suffered . . . suspension or forfeiture . . . may be relieved therefrom upon making application therefor in writing to the [board] and upon the filing of all tax returns . . . *and the payment of the tax, additions to tax, penalties, interest, and any other amounts* for nonpayment of which the suspension or forfeiture occurred, together with all other *taxes, additions to tax, penalties, interest, and any other amounts* due under this part . . . ." (Italics added.)].)

### 7. *The Statutory Definition of Tax Applicable to Section 19382 Confirms That Tax Means Tax*

Moreover, the statutory scheme contains a definition of tax which is consistent with the conclusion just stated. Section 23036, which defines "tax," applies to section 19382 pursuant to section 18402.[6] Section 23036 defines "tax" as the *tax imposed* under various sections of the Revenue and Taxation Code: the franchise tax imposed pursuant to section 23101 et seq.; the tax on net income not taxable under franchise tax imposed pursuant to section 23501 et seq.; the franchise or corporate income tax on unrelated business taxable income imposed under section 23731 et seq.; the tax on S corporations imposed under section 23802 et seq.; the tax on limited partnerships imposed under section 17935 or 23081; the tax on limited liability companies imposed under section 17941 or 23091; the tax on registered limited liability partnerships and foreign limited liability partnerships imposed under section 17948 or 23097; the alternative minimum tax imposed under section 23400 et seq.; the tax on built-in gains of S corporations, imposed under section 23809; and the tax on excess passive investment income of S corporations imposed under section 23811.[7] Section 23036 defines "tax" by reference to a tax imposed pursuant to statute; it makes no mention of penalties or interest.

---

[6]Section 18402, subdivision (a), a provision of part 10.2, Administration of Franchise and Income Tax Laws, states: "Except where the context otherwise requires, the general provisions and definitions provided in Chapter 1 (commencing with Section 17001) of Part 10 [Personal Income Tax Law] and in Chapter 1 (commencing with Section 23001) of Part 11 [Bank and Corporation Tax Law] shall apply to this part." Section 23036, defining "tax" is contained in chapter 1 of part 11.

[7]Section 23036 provides in relevant part: "(a)(1) The term 'tax' includes any of the following: [¶] (A) The tax imposed under Chapter 2 (commencing with Section 23101). [¶] (B) The tax imposed under Chapter 3 (commencing with Section 23501). [¶] (C) The tax on unrelated business taxable income, imposed under Section 23731. [¶] (D) The tax on S

When the language of a statute is defined by reference to a definitional provision, the express definition should not be disturbed to reach an implicit, not readily apparent, or convoluted result. (*Lennane* v. *Franchise Tax Bd., supra,* 9 Cal.4th at pp. 270-271.) The normal reason for the definition as in a body of legislation is that certain provisions elsewhere in the enactment use the term defined. Further, the definition clarifies the term's meaning as thus used. (*Disabled & Blind Action Committee of Cal.* v. *Jenkins* (1974) 44 Cal.App.3d 74, 82 [118 Cal.Rptr. 536].) The Court of Appeal has held: " 'When a legislature defines the language it uses, its definition is binding upon the court even though the definition does not coincide with the ordinary meaning of the words. If, however, the definitions are arbitrary, result in unreasonable classifications or are uncertain, then the court is not bound by the definition.' (1A Sutherland, Statutes and Statutory Construction (5th ed. 1992) The Structure of a Statute, § 20.08, p. 90, fns. omitted.)" (*Cory* v. *Board of Administration* (1997) 57 Cal.App.4th 1411, 1423-1424 [67 Cal.Rptr.2d 763].) As Sutherland points out, "Where a definition clause [in a statute] is clear it should ordinarily control the meaning of words used in the remainder of the act because of its authoritative nature. But the courts are not bound to follow a statutory definition where obvious incongruities in the statute would thereby be created, or where one of the major purposes of the legislation would be defeated or destroyed. Where a definition is not clear then the court should use all intrinsic and extrinsic aids available to determine the legislative intent. The presumption should be that a fair interpretation of the meaning of words as defined in the definition section should control." (1A Sutherland, Statutes & Statutory Construction (5th ed. 1992) Interpretive Statutes, § 27.02, p. 467, fns. omitted.)

The express definition of "tax" as a tax imposed pursuant to statute (§ 23036) is clear and controlling. Its application should not be disturbed to reach the conclusion, not readily apparent, that the word "tax" in section 19382 means tax *plus accrued interest.* (*Lennane* v. *Franchise Tax Bd., supra,* 9 Cal.4th at pp. 270-271.) Applying the statutory definition does not create

corporations imposed under Section 23802. [¶] (2) The term 'tax' does not include any amount imposed under paragraph (1) of subdivision (e) of Section 24667 or paragraph (2) of subdivision (f) of Section 24667. [¶] (b) For purposes of Article 5 (commencing with Section 18661) of Chapter 2, Article 3 (commencing with Section 19031) of Chapter 4, Article 6 (commencing with Section 19101) of Chapter 4, and Chapter 7 (commencing with Section 19501) of Part 10.2, and for purposes of Sections 18601, 19001, and 19005, the term 'tax' shall also include all of the following: [¶] (1) The tax on limited partnerships, imposed under Section 17935 or Section 23081, the tax on limited liability companies, imposed under Section 17941 or Section 23091, and the tax on registered limited liability partnerships and foreign limited liability partnerships imposed under Section 17948 or Section 23097. [¶] (2) The alternative minimum tax imposed under Chapter 2.5 (commencing with Section 23400). [¶] (3) The tax on built-in gains of S corporations, imposed under Section 23809. [¶] (4) The tax on excess passive investment income of S corporations, imposed under Section 23811."

incongruities in section 19382. Nor does the application of the statutory definition defeat the purpose served by section 19382—to allow a refund action only after payment of the tax, thereby facilitating the government's prompt collection of tax revenue. (See 1A Sutherland, Statutes & Statutory Construction, *supra*, Interpretive Statutes, § 27.02, p. 467.) This is not a case in which application of the enacted definition would direct an improbable application of the statute. (Cf., *Sacramento Data Processing etc. Sales* v. *Department of Consumer Affairs* (1982) 129 Cal.App.3d 348, 354-355 [181 Cal.Rptr. 51].)

### 8. *Conclusion*

We conclude that given the plain language of article XIII, section 32, and section 19382, and the statutory definition of "tax" in section 23036 as one imposed pursuant to statute, payment of accrued interest is not a jurisdictional prerequisite to an action for a refund of franchise taxes paid. We do not reach the question whether penalties must also be paid before a refund action will lie. That issue is not before us. Mr. Chen, on behalf of VP, paid the penalty in full prior to commencing this action.

B. *The Trial Court's Conclusion There Was No Deferred Compensation Arrangement and VP Was Entitled to the Deduction Cannot Be Disturbed on Appeal.**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III. DISPOSITION

The judgment is affirmed. Roy Chen, as successor in interest to Valuable Properties, Inc. (dissolved), is to recover his costs on appeal from the State of California, Franchise Tax Board.

Grignon, J., and Armstrong, J., concurred.

---

*See footnote, *ante*, page 1110.